Freeman, J.,
delivered the opinion of the court.
This bill is filed to have an abatement of the purchase money, on account of a deficiency of about 105 acres in a tract of land purchased by complainants, known as “Wolf Island.”
The island is situated in Tennessee river, and was supposed to contain 214 acres. Two other tracts of land were sold at the same time by E. W.» Porter to complainants, ■one supposed to contain 800 acres and another 100 acres, situated on the mainland hard by the island tract. These three tracts were represented to and supposed by the parties to contain the number of acres stated, in all amounting to 1,114 acres. The price agreed to be paid was $13,925, a part of which was paid in cash, and notes given for the balance.
The bill charges that Porter represented the island tract ■to contain 214 acres; that complainants were unacquainted with the land, or nearly so, and that they relied on the representations of Porter; that they were induced to place confidence in Poster’s statement by the indorsement of his high character, given by hlr. Walker, who was the agent for the lands, with whom they were well acquainted.
They allege that they bought the land by the acre at *668 $12.50, and not in gross; and, in a word, relied on the statements of Porter for a correct statement on this subject.
Porter died before the commencement of this suit. The bill is answered by his representatives, claiming, from information and belief, that the land was sold in gross and not by the acre.
A title bond was given by Porter which has been lost, but is supplied by proof, and we take it correctly, especially as to the Wolf Island tract. The terms of this bond as to this tract are as follows, after stating the fact of the sale of the other tracts, its language is: “The first, known as the Wolf Island tract, lying in the Tennessee river between Savannah and Crump’s Landing, and containing 214 acres, less tide washes;” by which, we take it, is meant less any loss from washing caused by the tides-or currents of the river. The other two tracts are described as we have stated, with the addition as to the acres, “more or less.”
From .the face of the contract it is clear there is no warranty or stipulation on the part of Porter that the island should contain 214 acres. For the deficiency, whatever it might be, no action at law would lie as for breach of covenant.
Such is the rule definitely laid down in the case of Allison v. Allison, 1 Yer., 16, and other cases in our state. The rule is thus stated in a dictum by Judge Caruthers in Miller v. Bentley, 5 Sneed, 674, 675: “Where the boundaries are given correctly in the contract of sale, and there is no stipulation as to quantity nor any fraud, it is a sale in gross, and no deduction in the price can be made for deficiency in quantity.” The case standing on the title bond alone under this rule, the complainants would be repelled, for the land, being an island -and so described, its boundaries were known to- the parties, and there is clearly no stipulation or warranty that this “island” shall contain the number of acres stated.
*669 But [as] it is said by this court iu the case of Barnes v. Gregory, 1 Head, 237, this contr£|et is silent as to whether the sale was by the acre or in gross, and we add that this bond only fails to show a sale by the acre from its face, and has no guaranty as to quantity. This fact, says the court in the above case, may be made out by parol or extrinsic [written] evidence, such evidence may be looked to, it is held, and that the uniform course of decision gave relief in such cases where there was a substantial deficiency — that is, in cases where the sale was thus shown to have been by the acre, and even in cases of sales in gross where there was fraud or imposition. Ibid.
The same rule is held to apply in favor of the vendor where there is an excess, for which by mistake or fraud he has received no compensation, or has been deprived of the benefit of his contract by the acre. See Horn v. Den-ton, 2 Sneed, 125.
The rule on this subject of abatement of the price in England, in cases of failure of. acreage, is thus given in Leading Oases in Equity, Vol. 1, p. 71. “Where the vendor having a title to an estate, misrepresents the acreage, whether the estate be sold at so much per acre or not, the purchaser will be entitled to compensation for a deficiency. This rule is especially held to apply to cases like the present where a conveyance has not been made. It seems from the authorities cited in support of this view, that it is a matter of coru’se to grant the relief in a court of equity in England, unless the deficiency be trifling. Ibid.
With these principles settled, w© think the proof in this case shows, by a decided preponderance, that the sale was by the acre, and that Porter certainly .represented the island to contain the 211 acres, less tide washes. Even the testimony of Howrie, whose opinion was that it was a sale in gross, corroborates this view, for h© says that Porter objected to guaranteeing the quantity of land in the island tract, subject as it was to be washed away by river currents; *670 therefore the stipulation that loss from this influence was excepted in the title bond. The proof, however, shows that there has been no loss from this source, but, on the contrary, a probable addition to the soil of the island.
We need not give details of the testimony on this question. Suffice it to say that it is clearly shown by several witnesses that Porter stated he had sold the land at $12.50, and said that if there was the deficiency complained of, he must make it good; no doubt he would have done so had he lived. The fact that his own deed called for 214 acres, and that the notes are taken for the precise sum, including the cash payment that results from multiplying 1,114 acres by $12.50, tbe assumed price, all serve to lead to tbe same conclusion as asserted by tbe testimony to which Ave refer.
With this view of tbe case we do not deem it necessary to discuss other questions referred to by counsel, as they Avould not change the result.
We therefore hold the complainants are entitled to an abatement for the 105 acres deficiency, at the price agreed, $12.50, reversing tbe decree of the chancellor.
The costs of this and court below will be paid by defendants.