## CHARLESTON.

PRATT *et al. v.* BOWMAN *et al.*

Submitted January 23, 1893.—Decided April 1, 1893.

1. SALE—EXCESS IN QUANTITY OF LAND.

A sale of a tract of land as a given number of acres, more or less, is a sale in gross, with which a court of equity in the absence of fraud will not interfere in case of an after-discovered excess, unless it clearly appear, such excess is so great as to affect the terms of the contract, and warrant the conclusion, that the sale would not have been made, had the truth been known.

2. SALE—EXCESS IN QUANTITY OF LAND—RESCISSION—COMPENSATION.

In such case, that is, where there has been such sale, and such after-discovered excess exists, the Court will on application of the vendor rescind the sale, but will not require the vendee against his will to keep the land and pay for the excess.

3. SALE—EXCESS IN QUANTITY OF LAND—COMPENSATION.

Where the vendee, after he discovers an excess of acres in the tract of land purchased by him so large, that it could not have been taken into contemplation by his vendor, without making

his discovery known or offering to rescind the contract sells the
land to an apparently innocent purchaser, and thus puts it beyond the power of a court of equity to restore the interested parties to their original rights, on application of the injured party
the Court will require the vendee, either to place himself in a
condition to rescind the contract, or to pay those entitled thereto
a just compensation for such excess.

4. SALE—EXCESS IN QUANTITY OF LAND—EXECUTOR—PRESUMP
TION—RESCISSION—COMPENSATION.

If an executor uninformed as to the quantity sells and conveys
a tract of land under the will of his testator as containing one
hundred and forty acres, more or less, and it is afterwards discovered that the tract contains two hundred and fifty five
acres, the excess is so great that a court of equity will presume, that the executor would not have entered into the contract,
had the truth been known; and, unless it clearly appears from
the evidence and circumstances, that such excess was had in contemplation, the court on application of those interested will rescind the contract or require the purchaser at his election to pay
a just compensation for the excess.

5. SALE—EXCESS IN QUANTITY OF LAND—EXECUTOR—PARTIES—
RESCISSION.

While the executor is the proper party to institute suit to rescind such contract, yet if he has disbursed the purchase-money
among the devisees and closed his accounts as such executor
and does not proceed in a reasonable time, the devisees have
the right to ask for the rescission of such sale, not only for their
own benefit, but also for the protection and relief of the executor.

D. M. WOTRING for appellants cited 8 W. Va. 406; Id.
437–440; 1 Lom. Ex'rs. 218, 219; Id. 367; 2 Lew. Trusts
562; 1 Sug. Vend. 74; 4 Kent Com. 325 (note b.); 3 Wait
Ac. & Def. 261; 1 Sug. Pow. 77; 19 W. Va. 521; 21 W.
Va. 11, 12; 28 Gratt. 233; 26 Am. Dec. 166.

W. B. MAXWELL for appellee:

A.—*Cases in which the Court held that certain pleadings were
no part of the record.*—25 W. Va. 108; 26 W. Va. 710;
29 W. Va. 659.

B.—*Definition of word "Pleading."*—Sto. Eq. Pl. § 4 and note
1; Steph. Pl. 1.

C.—*Doctrine relative to proceeds of land devised to be sold.*—1
Jar. Wills (s. p.) 524; 1 Will. Ex. (b. p.) 158 (6th Am.
Ed.).

D.—*Mistake in substantial inducement.*—2 Min. 625–6; 1 Sto.
Eq. Juris. (last Ed.) §§ 138h, 138i, 138k.

E.—*Mutual mistake, laches, &c.*—1 Sto. Eq. Juris. §§ 150, 151; 19 W. Va. 482, 490, 491; Pom. Cont. § 408; 8 W. Va. 409, 16 p't of Syl.

F.—*Statute of frauds and evidence to vary deed.*—Code, Chap. 98; Stark. Ev. 655.

G.—*One executor may act if he alone qualifies.*—Code, c. 86, s. 1.

I.—*Making new case by amended bill.*—15 W. Va. 444; 28 W. Va. 652; 1 Bar. Ch'y Prac. 90, and authorities cited.

J.—*Value of land.*—20 Ohio, 453.

K.—*Power of executor to sell.*—3 Will. Ex. 1754 (6 Am. Ed.); 1 Will. Ex. 723 and notes (6 Am. Ed.); 1 Sug. Pow. s. p. 189 and notes (3 Am. Ed.).

L.—*Legatees can not impeach a conveyance by executor.*—2 Will. Ex. 998 *et seq.* and notes (6 Am. Ed.).

M.—*Sale in gross.*—1 Sto. Eq. Juris. § 144a.

DENT, JUDGE:

David Wheeler in his last will and testament appointed John W. Guseman and John D. Hall, his executors, and gave them full power to sell and convey his realty, either at public or private sale, as they should think best for all parties concerned, and either as a whole or in divided portions. Afterwards by a codocil to his will he appointed his wife, Elizabeth Wheeler, executrix instead of John D. Hall to assist John W. Guseman to execute his will. His property after payment of debts he bequeathed and devised to his wife and children. On the 27th day of January, 1880, said will was admitted to probate; and said Guseman on his own motion was appointed the sole executor thereof.

About the 5th of March, 1881, said executor tried to sell the land in controversy at public auction, but failing to do so sold the same at private sale to the defendant John C. Bowman for the sum of nine hundred dollars, and on the 31st day of March, 1881, he conveyed said land to said Bowman by deed with covenants of special warranty, using the following language to describe the same, to wit: "All that certain piece or parcel of land known as the residue of the David Wheeler farm, * * * containing, after deduct-

ing one hundred and ten acres, one hundred and forty acres, more or less." During the year 1884 or 1885, the purchaser Bowman had said land surveyed, and discovered that it contained two hundred and fifty five acres, an excess of one hundred and fifteen acres over the estimated quantity. He gave no notice of this excess to his vendors, but shortly after the discovery, on the 31st day of March, 1888, having sold two acres of the land prior thereto to James F. Liller, he sold the residue thereof, described as containing two hundred and fifty three acres, more or less, to David F. and H. R. Liller, for the sum of two thousand one hundred and twenty five dollars.

On the first Monday of July, 1889, Elizabeth Wheeler and the other devisees or legatees of David Wheeler, deceased, filed their bill against John C. Bowman and others, including John W. Guseman, executor aforesaid, setting out the facts as heretofore stated, and praying that the said John C. Bowman be required to pay them, as the parties in interest under said will, a just compensation for the excess in said land, and for general relief. They further alleged that said Bowman is a non-resident, and caused attachments to be issued and served on David F. and H. R. Liller and Enos Sell, in addition to making them parties to the bill. A demurrer having been sustained to the original bill, the plaintiffs filed an amended bill setting out the same facts, with some additional allegations.

John C. Bowman filed his answer to said bill, admitting the allegations thereof, except he claimed that he purchased said land by the boundary with the knowledge and belief that there was far more than one hundred and forty acres of it, and that the said executor and some of the plaintiffs had knowledge of this fact at the date of his purchase. The answer of the Lillers admits their purchase and the quantity of the land, and that they owe one thousand three hundred and forty dollars purchase-money on the land, but know nothing of the justice of plaintiffs' claim.

The evidence of John W. Guseman was taken, and he testified, in effect, that he sold supposing there was something more than one hundred and forty acres in the tract, but had no idea the excess was so great, or he would not

have made the sale; that he lived thirty five miles away from the land, and was only casually acquainted with it; that when he made the deed it was understood that the words "more or less" meant five acres on the hundred; that he was to survey it at the instance of the purchaser whenever he demanded it; and if the land fell short more than five acres on the hundred he was to allow five dollars per acre for the deficiency; and, on the other hand, if there was a similar excess, he was to be paid five dollars per acre. That the purchaser never sent for him to do the surveying, but, after he learned there was an excess, he wrote to the purchaser requesting pay for the excess, but received no answer to his letter. He did not bring suit to rescind the contract or recover the excess because of his attorney's advice.

Some other witnesses testified that the executor said he was satisfied there were probably more than one hundred and forty acres in the tract, as these old surveys generally overrun in quantity. John C. Bowman, without pointedly contradicting the evidence of the executor, testified, in effect, that he purchased the land by the boundary; that he had been led to believe there were more that one hundred and forty acres in the tract; that he looked at it, and was satisfied there were more than two hundred acres of it, and this induced him to buy, although he did not mention his belief as to the quantity to any one. These are the facts, and substantial evidence in the case. On the hearing the Circuit Court decided that the pleadings and proofs were for the defendants, and entered a decree dismissing the cause, from which the plaintiffs appeal.

The principles of law governing litigation of this character will be found fully discussed in the cases of *Harrison* v. *Talbot*, 2 Dana, 258; *Western M. M. Co.* v. *Peytona C. C. Co.*, 8 W. Va. 406; *Crislip* v. *Cain*, 19 W. Va. 441; *Anderson* v. *Snyder*, 21 W. Va. 632. While there are many others, these are referred to as leading cases on the questions involved, and from which the law bearing on the present controversy is gleaned.

We find from these decisions that all sales of land are divisible into two principal classes: (1) Sales by the acre;

(2) sales in gross or by the boundary. Sales by the acre may be again subdivided into (1) sales by the acre, so expressed in the conveyance; (2) sales by the acre according to the positive understanding and agreement of the parties, but not so expressed in the conveyance. In both these classes a court of equity will grant relief in case of either an excess or deficiency clearly appearing.

Sales in gross or by the boundary are divisible into three subclasses: (1) Sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any designated or estimated quantity of acres; (2) sales of the like kind in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such a manner as to show that the parties intended to risk the contingency of quantity, however much it might exceed or fall short of that which is mentioned in the contract; (3) sales in which it is evident from extraneous circumstances, such as locality, value, price, time, the conduct, conversation, and character of the parties, that they did not or ought not to contemplate or intend to risk more than the usual rates of excess or deficiency in like cases, or than such as might reasonably be calculated on as within the range of ordinary contingency. Contracts belonging to either of the first two subdivisions will not be disturbed at the instance of either party by a court of equity when there has been no fraud; but in sales under the third subdivision an unreasonable surplus or deficiency will entitle the injured party to equitable relief, unless he has by his conduct forfeited or waived his equity.

Although it has been held that courts will not presume that an executor who ought not to sell in gross has done so, unless the fact is clearly established, yet the facts in this case clearly establish that the executor did sell the land in gross, but that in so doing, as is evidenced by the extraneous circumstances, locality, value, price, time, conduct, conversation and character of the parties, he did not contemplate or intend to risk more than the usual rate of excess in similar cases, or than such as might reasonably be

calculated as within the range of ordinary contingency, and had no thought that the land sold would exceed the alleged quantity by exceeding five *per centum*, much less eighty three *per centum*.

It is true that the purchaser claims that he believed he was purchasing exceeding two hundred acres, yet he took good care not to make this belief known, and allowed the deed to be written for one hundred and forty acres, more or less, when he knew he was dealing with a fiduciary who had no right to make hazardous sales, and buying land, the proceeds of which belonged in part to a widow and her infant children. The addition of the words "more or less," while it converts what would otherwise be a sale by the acre to a sale in gross, has been defined to merely cover a reasonable excess or deficiency only; that is, such as may be caused by a difference in surveys or variations in instruments, or similar causes. Such deviations ought not usually to exceed five *per centum* of the whole tract as described and will not be so held, unless there is a special agreement or certain understanding between the parties that those words so used are intended to cover any excess or deficiency, however great. This understanding or agreement must be mutual—in other words, the minds of the contracting parties must meet—or equity will give no such broad construction to the use of the words "more or less," but will relieve the injured party against a considerable or gross mistake, notwithstanding the use of these or other like expressions. And in case of such fiduciary having such an agreement or understanding which would result in a considerable loss to those for whom he was acting, equity would hold him guilty of a devastavit, as he ought not to enter into a hazardous contract of this kind, as it is not incumbent upon him to do so, even though it should turn out for the benefit of the estate. It is true the executor was satisfied he was selling a tract of land in excess of one hundred and forty acres, but it can not for a moment be maintained that he had any idea he was selling a tract of two hundred and fifty five acres.

When the difference between the actual and the estimated quantity of land is so great as to warrant the con-

clusion that the contract would not have been entered into had the truth been known, the injured party is entitled to relief in equity on the ground of gross mistake. Twenty *per centum* has been held in similar cases to justify the interference in equity; in this case it is about eighty four *per centum.* The settled law of this State, however, is that in cases of mutual mistake so gross that a court of equity will interfere, unless fraud is apparent, the court will not make a new contract between the parties, but will rescind the contract, and place the parties in the same position, as near as possible, occupied before the mistake was made. The Circuit Court appears to have been misled in the law of this case by the statement of Judge Woods, found on page 647, 21 W. Va., in case of *Anderson v. Snyder,* where he says : "Applying these principles to the said contract we find the terms thereof bring it precisely within the rule laid down in *Crislip v. Cain;* that it is a sale in gross, and not a sale by the acre; that no warranty of the number of acres is thereby implied; that no ambiguity exists upon the face thereof; and therefore none of the parol testimony taken in the case can be used to explain, alter, or modify the same; and that the said plaintiff is not entitled to any compensation for that cause on account of any deficiency in the quantity of said lands."

This statement would seem to imply, although stating the law correctly, that no relief could be granted, where the sale is in gross, for any deficiency, however great, and *vice versa* for any excess. Such is not the law. But the remedy afforded in cases of deficiency and excess is determined by the authorities aforesaid to be different, according to the party making application, although the law in some respects as stated by the learned judges in the cases referred to would seem to imply otherwise; in other words, that where there is a mutuality of mistake the remedy should be mutual.

This, however, on a close comparison of their several opinions, will be found to be a gross error, and that the law deduced from these opinions is as follows : (1) In case of an excess in a sale in gross the vendor has only the right to ask for a rescission of the sale, and the vendee has the right

to elect whether the sale shall be rescinded, or he will pay a just compensation for the excess. 8 W. Va. 408. (2) In case of a deficiency, in the absence of presumptive fraud, which is usually held to exist in such cases, the vendee can only ask for a rescission of the contract, and put the vendor to the election whether the sale shall be rescinded, or he allow an abatement of the purchase-money, or pay a fair compensation for the deficiency. In short, in a case of a gross and mutual mistake, both parties being equally innocent, a court of equity can only rescind the sale, or put the defendants to the choice of having the sale rescinded or allowing or paying a just compensation for the excess or deficiency.

If, therefore, the executor had filed his bill promptly when the discovery of the excess came to his knowledge, the court would have rescinded the sale on a repayment of the purchase-money, if the vendee did not elect to keep the land, and pay a proper and just compensation for the excess in quantity. The executor, according to his testimony, on learning of the gross excess in the quantity of land, wrote to the purchaser to ascertain his intentions with regard to the same, but receiving no answer, and being uninformed as to his legal duties in the premises, took no further steps in the matter, but cast the responsibility of suing on those whom he was representing in his fiduciary character. In the mean time, the purchaser, finding that he had received a deed for eighty four *per centum* more land than he had bargained for, while apparently not concealing the fact, takes no pains to make it known to the parties in interest, but, as soon as an opportunity occurs, disposes of the land to other purchasers, not as one hundred and forty acres, more or less, but as two hundred and fifty five acres, more or less.

While it was the duty of the executor to have the contract rescinded, he failed to do so, and having paid over the purchase-money to the devisees, and having settled his accounts, no doubt long since, as such executor, there is no good reason why the devisees interested in the claim should not prosecute this suit for their own benfit, especially as it would operate as a protection to the executor.

They pray for compensation, when their only right is to have the sale rescinded. This is on the theory that the purchaser, Bowman, having sold the property after he discovered the excess without offering to rescind, has been guilty of a fraud as to them, and made himself liable for the value of the excess, as he has placed it beyond his power to ask for a rescission or make an election. On filing his answer, the purchaser had the right to ask that the contract be rescinded, but, failing to do so, it must be presumed that he waived his right in this respect, and to be willing, if any relief be granted, that it be in accordance with the prayer of the plaintiffs. This being purely an equitable claim is not barred by the statute of limitations; and there is no good reason why it should be disallowed as a stale demand, as the parties are all living and before the court, and equity can be done between them.

The measure of the compensation to be ascertained is the contract price per acre, if known, and, if not, the average price per acre for which the land sold. The value was fixed by the executor at five dollars per acre. Allowing the purchaser five acres on each hundred acres, or fractional part thereof, there would still be an excess of one hundred acres, which at five dollars per acre would fix the compensation at five hundred dollars; with interest thereon from the 31st day of March, 1881, the day of sale or conveyance, amounting in the aggregate to the sum of eight hundred and sixty dollars. The questions arising on the attachments have not been disposed of by the Circuit Court.

For the foregoing reasons the decree complained of is reversed, and this case is remanded to the Circuit Court to be further proceeded in in accordance with this opinion and the rules governing courts of equity.

HOLT, JUDGE :

From the facts as I deduce them from the pleadings and evidence, I am inclined to think the decree complained of ought to be affirmed, but from the general doctrine stated as governing the case I do not dissent.

REVERSED.    REMANDED.