Bigham v. Madison.

BIGHAM v. MADISON.

(*Knoxville.* October 21, 1899.)

1. RESCISSION. *By vendee.*

If a vendee is otherwise entitled to rescission, on account of failure of title to part of the land purchased, his right will not be defeated by the fact that he surrendered that part of the land to the adverse superior claimant without suit or contest. (*Post, pp. 359, 360.*)

Case cited: Callis v. Cogbill, 9 Lea, 138.

2. SAME. *Mutual mistake.*

An executed sale in gross of land will be rescinded, at the suit of the vendee, on the ground of mutual innocent mistake of the parties, where title failed to one-half in quantity and to more than one-half in value of the lands intended and supposed to be embraced in the deed, including a part, specifically pointed out by the vendor, on which the vendee expected to and did erect his home. (*Post, pp. 359–367.*)

Cases cited and approved: King v. Doolittle, 1 Head, 78; Cook v. Sumner, 1 Sneed, 716; Helm v. Wright, 2 Hum., 72; Cromwell v. Winchester, 2 Head, 390; Horn v. Denton, 2 Sneed, 125.

Cited and distinguished: Waters v. Hutton, 85 Tenn., 109; Moses v. Wallace, 7 Lea, 413; Blakemore v. Kimmons, 8 Bax., 473; Meek v. Bearden, 5 Yer., 467.

3. SAME. *Pleadings.*

Under a bill averring a certain state of facts and claiming rescission for fraud, the Court may deny rescission for the alleged fraud, and grant it, if the facts averred and proved justify it, on the ground of mutual innocent mistake. (*Post, p. 367.*)

---

FROM POLK.

---

Appeal from Chancery Court of Polk County. T. M. McCONNELL, Ch.

G. G. HYATT and INGERSOLL & PEYTON for Bigham.

B. B. C. WITT for Madison.

WILKES, J.    This is a bill to have a rescission of a contract of sale of a small tract of land. The land is described in the deed by metes and bounds, and as "containing twenty-five acres more or less."

It appears that the title to about one-half of this land failed, and upon a survey of the premises, complainants, without suit, surrendered to the superior title, and gave up so much of the land as is covered by it. It further appears that the portion surrendered, besides being about one-half of the premises, was the most valuable part of it, and that upon it the vendee had erected his houses, and made improvements, and cut timber before the lines were fixed. The price paid for the land was $125.

The Chancellor held that complainant had failed to show a superior outstanding title to the land, and that he had surrendered it voluntarily without ejection, and was, therefore, not entitled to recover, and complainant appealed. The cause was assigned to the Court of Chancery Appeals, and heard by that Court, and it reversed the holding of the Chancery Court, that complainant could not recover because he had surrendered possession to a superior

title without suit, and was of opinion the decree could not be sustained· upon that ground.

The Court of Chancery Appeals finds, as a matter of law and fact, that there was an outstanding superior title that covered the land which complainant surrendered, and that complainant could not be denied relief because he surrendered to such title without suit. Citing *Collis* v. *Cogbill,* 9 Lea, 138.

This holding is sustained by the case cited, and it is not now in controversy. The Court of Chancery Appeals was, however, of opinion that there was no fraudulent misrepresentation made by the vendor as to the quantity of the land embraced, and hence there was no ground for relief.

The facts, so far as necessary to be ·stated, are that the parties went upon the land and personally inspected it. The Court of Chancery Appeals finds that the complainant and defendants differ as to what statements were made, the complainant stating that the defendant, Madison, pointed ·out on the ground, and on a map, where the western line ran, and where it was located. He also said that the defendant, Ballew, stated that he did not know where the western line was located, but that he would be bound by whatever Madison, the co-defendant, said. He states that Madison, while he did not point out the exact location of .the west line, told him it ran west of the place where he built his home, and stood in

the road and pointed out the lay of the lines with his hand, and said he would be positive it would come down to where he was. Another witness states that, after the trade was made, both Ballew and Madison pointed out where the west line was, and said it was west of the home of complainant, then being erected. The Court of Chancery Appeals base their finding of facts mainly upon the testimony of Weeks, who was present when the trade was made. He states, in substance, that Madison showed complainant where he thought the line was, and stated that going by the map, which was referred to, it would go as far as complainant claimed and bought, and that he would be safe in saying that it ran where complainant bought to, and that it would run to about the middle of block No. 8 of land across the line in Georgia, which appears to have been a well-known corner. Madison, after saying this, said: "Now, Joe (meaning complainant), you have bought it, much or little," to which complainant replied: "Yes, this boundary is mine running back half way of lot No. 8."

The Court of Chancery Appeals, upon these facts, find that there was no false or misleading representations made by defendants as to the true location of the line, and that they were not, therefore, liable, and the complainant was not entitled to rescind.

We think the Court of Chancery Appeals is in

error in its conclusion. We grant that its finding is conclusive that there was no false and misleading representatioins made by the defendants, known to them to be false, and hence, no actual fraud, but the facts as found by it make out a clear case of mutual mistake as to the location of the lines, a matter material to the contract, not only as to the quantity of land, but as to the location of the lines, and the specific lands the vendors thought they were selling and the vendee thought he was buying, and which were pointed out.

It well settled that a vendee of land, when it is sold in gross, or with the description, "more or less," or "about," does not thereby, *ipso facto,* take all risk of quantity in the tract. Kerr /on Fraud and Mistake, Sec. 65; 15 Am. & Eng. Enc. of Law, p. 718; Jones on Real Property, Vol. 1, Sec. 407; 2 Warvelle on Vendors, p. 839; *Skinner* v. *Walker,* 34 S. W. Rep., 233; *Drake* v. *Eubanks,* 32 S. W. Rep., 492.

It is also well established that the use of the words, "more or less," or "about," or similar words, in designating quantity, although they show a sale in gross and not by the acre, cover only a reasonable excess or deficiency. 2 Warvelle on Vendors, p. 839; 1 Jones on Real Property, Sec. 407; Kerr on Fraud and Mistake, Sec. 65; 1 Story Equity, Sec. 141; 15 Am. & Eng. Enc. of Law, 718, 719; *Belknap* v. *Sealy,* 67 Am.

Dec., 120; *Harrell* v. *Hill,* 68 Am. Dec., 2121; *Drake* v. *Eubanks,* 32 S. W. Rep., 492; *Stebbins* v. *Eddy,* 4 Mason, 412; *Couse* v. *Boyle,* 39 Am. Dec., 514; *Pratt* v. *Bowman,* 17 S. E. Rep., 210; *Wheeler* v. *Boyd,* 6 S. W. Rep., 614; *Newton* v. *Tolles.* 9 L. R. A., 50.

It has been held that such discrepancy in quantity, in order to be covered by such terms, should not exceed 10 to 15 per cent., even when sales are confessedly in gross, and 20 per cent. is too great a difference to be so covered. 15 Am. & Eng. Enc. of Law, 718. And 33 1-3 per cent. is such an amount as universally has obtained relief. 4 Kent's Commentaries (12th Ed.), 467; *Harrell* v. *Hill,* 68 Am. Dec., 2121; *Harrison* v. *Talbott,* 2 Dana (Ky.), 258.

Mutual mistake of the contracting parties to a sale in regard to the subject-matter of the sale, which is so material as to go to the essence of the contract, is, by all the cases, a ground for relief and rescission in a Court of Equity. *Belknap* v. *Sealy,* 68 Am. Dec., 120; *Harrell* v. *Hill,* 68 Am. Dec., 212; *Couse* v. *Boyle,* 38 Am. Dec., 514; *Camp* v. *Norfleet,* 5 S. E. Rep., 375; *Wheeler* v. *Boyd,* 6 S. W. Rep., 614; *Boyd* v. *Moss,* 39 S. W. Rep., 983; *Skinner* v. *Walker,* 34 S. W. Rep., 233; *Newton* v. *Tolles,* 9 L R. A., 50; *Hays* v. *Hays,* 11 L. R. A., 276; *Hazleton* v. *Dickinson,* 51 Iowa, 344; Jones on Real Property,

Vol. 1, Sec. 407; 2 Warvelle on Vendors, pp. 339, 340.

It has also been held that even when the parties saw the premises and knew the boundaries, it cannot prevent relief when there was mutual gross mistake as to quantity. *Belknap* v. *Sealy,* 67 Am. Dec., 120; *Paine* v. *Upton,* 41 Am. Reps., 871; *Newton* v. *Tolles,* 9 L. R. A., 50; *Drake* v. *Eubanks,* 32 S. W. Rep., 492; *Hazleton* v. *Dickinson,* 51 Iowa, 244. And the relief will be granted in executed as well as executory contracts. *Belknap* v. *Sealy,* 67 Am. Dec., 120; *Harrison* v. *Talbott,* 2 Dana, 269; *Skinner* v. *Walker,* 37 S. W. Rep., 233; Warvelle on Vendors, p. 840. And relief will be granted when the mistake is so material that if the truth had been known to the parties the trade would not have been made. *Belknap* v. *Sealy,* 67 Am. Dec., 120; *Pratt* v. *Bowman,* 17 S. E. Rep., 210; *Camp* v. *Norfleet,* 5 S. E. R., 375; *Hazleton* v. *Dickinson,* 51 Iowa, 244; 2 Warvelle on Vendors, 227. And if quantity entered into consideration in fixing price, and price is fixed upon an estimate of quantity that proves grossly incorrect, relief will be granted. *Hill* v. *Buckley,* 10 Ves., 393; *Pratt* v. *Bowman,* 17 S. E. R., 210; *Camp* v. *Norfleet,* 5 S. E. R., 375; *Drake* v. *Eubanks,* 32 S. W. R., 492; *Wheeler* v. *Boyd,* 6 S. W. R., 614; *Hays* v. *Hays,* 11 L. R. A., 376; *Skinner* v. *Walker,* 34 S. W. R., 233; *Waters* v. *Helton,* 1 Pick., 114; *Meek*

v. *Bearden,* 5 Yer., 467; 2 Warvelle on Vendors, 838, 839.

It is not necessary that fraud be shown in order to obtain relief. Innocent and mutual mistake alone are sufficient grounds for rescission and other relief. *Couse* v. *Boyle,* 38 Am. Dec., 514; *Hill* v. *Buckly,* 19 Ves., 393; *Newton* v. *Tolles,* 9 L. R. A., 50; *Hays v. Hays,* 11 L. R. A., 376; *King* v. *Doolittle,* 1 Head, 78; *Raines* v. *Gregory,* 1 Head, 231; *Hardin* v. *Eagin,* 2 Tenn. Ch., 41; *Cook* v. *Sumner,* 1 Sneed, 716; *Gillespie* v. *Moon,* 2 Johns, Ch., 585; 1 Story's Equity, Sec. 155; *Helm* v. *Wright,* 2 Hum., 72; *Cromwell* v. *Winchester,* 2 Head, 390; *Horn* v. *Denton,* 2 Sneed, 125; 2 Pomeroy's Equity, Sec. 856, and note.

There are differences in sales in gross (such as are evidenced by the expressions, "more or less," "about," "by estimate") and sales at "hazard," when quantity is not regarded or material or estimated. In the first class of cases relief will be granted, in the latter it will not. *Pratt* v. *Bowman,* 17 S. E. Rep., 216; *Camp* v. *Norfleet,* 5 S. E. Rep., 375; *Waters* v. *Hutton,* 1 Pick., 109; *French* v. *Chancellor,* 40 Am. St. Rep., 548; *Talbott* v. *Harrison,* 2 Dana, 269; *Skinner* v. *Walker,* 34 S. W. Rep., 233; 2 Warvelle on Vendors, p. 926.

It is true a purchaser can have no relief when he sues for lands not pointed out to him and that he did not buy. *Waters* v. *Hutton,* 1 Pick.,

---

---

109; *Moses* v. *Wallace,* 7 Lea, 413; *Blakeman* v. *Kinnions,* 8 Bax., 473; *Meek* v. *Bearden,* 5 Yer., 467.

But while this is true, if the lines are pointed out and the parties are mutually and honestly mistaken as to their location, and as to the land embraced, when the mistake is material, and when the purchaser does not get the land he intended to buy, and which the vendor thought he was selling, and had a right to sell, it will be ground for relief and rescission, upon the ground of mutual mistake, which was equivalent to fraud in law.

Now, in the case at bar, we have a sale of land described in the deed as "25 acres, more or less." The land is shown, the lines are pointed out, the corners located, and while the vendor said in substance that he would not guarantee where the lines and corners were, still he assured the vendee they would embrace the land he saw, and where he wanted to locate, and did locate his house. There was a superior title to 50 per cent. or more in quantity, and still more in value of the land. Grant that the vendor was innocent of any intentional wrong, and that there was no guaranty of quantity, still there was a clear case of mutual mistake and an evident ground for relief. In the language of Judge Story, "A Court of Equity would be of little value if it could suppress only positive frauds and leave mutual mis-

takes, innocently made, to work intolerable mischief contrary to the intention of the parties. It would be to allow an act originating in innocence to operate ultimately as fraud by enabling the party who receives the benefit of the mistake to resist the claims of justice under the shelter of a rule framed to protect it." 1 Story Eq., 10 Ed., Sec. 155.

The complainant in this case sues upon the facts, and asks a rescission on these facts, and while he insists that the act of defendants was fraudulent, the proof fails to make out a case of actual fraud, but instead makes out a case of mutual mistake, equivalent to fraud in law.

The difference between the two in a case like the present is simply the difference between a party who knowingly misstates facts, and one who innocently misstates them, believing them to be true. In either case the aggrieved party is entitled to rescind upon the facts as made out.

The decree of the Court of Chancery Appeals is reversed, and the complainant is decreed to be entitled to a rescission, and the cause is remanded to the Court below, that the rights of the parties may be adjusted upon such rescission in view of the improvements put upon the land, etc.

The defendants will pay all costs.