CHARLES W. RATHKE v. JESSIE A. TYLER, Appellant.

**Deeds:** DESCRIPTION: ACREAGE: "MORE OR LESS": EQUITABLE RELIEF. The words "more or less" in connection with the description in a deed reciting a certain number of acres indicate a sale in gross, even though the price stated is an exact multiple of the acreage mentioned; but they do not indicate that the purchaser takes the risk, *ipso facto,* of the quantity of land conveyed; they are to be construed as indicating that the acreage is approximately the number mentioned, and when the discrepancy is great equity will grant relief.

**Same:** SALE BY THE ACRE. Where a sale of land is by the acre the shortage presumed to have been contemplated by the parties is only such as results from errors in measurement, and the words "more or less" are intended to cover but slight inaccuracies. Evidence held to show that a sale by the acre was intended, and that the shortage was sufficient to authorize relief.

**Husband and wife:** AGENCY. Evidence in an action by a married woman to recover a portion of the price paid for land, on account of a deficiency in the acreage, is held to show the husband's authority to act as her agent in the transaction.

*Appeal from Pottawattamie District Court.*— HON. N. W. MACY, Judge.

MONDAY, APRIL 8, 1907.

REHEARING DENIED, TUESDAY, NOVEMBER 19, 1907.

SUIT to recover the amount overpaid for land owing to shortage in number of acres. Decree was entered as prayed, and defendant appeals.— *Affirmed.*

*Flickinger Bros.,* for appellant.

*W. S. Lewis* and *F. W. Miller,* for appellee.

LADD, J.— Plaintiff bought a tract of land of the defendant in January, 1902, the deed to which was executed February 28th following. It recited a consideration of $5,000 and described the land as situated in Mills county, being "the east half of the northeast quarter and part of the southwest quarter of the northeast quarter, described as follows, to-wit: Commencing at the southeast corner of the southwest quarter of the northeast quarter, and running thence north forty-nine rods; then south eighty-six degrees west, sixty-nine rods, to the middle of Mosquito creek; thence down the middle of said creek to the south line of the northeast quarter of section one; thence east on said line to the place of beginning — all being in the northeast quarter of sec-

tion one, township seventy-three, range forty-four, in said county, containing one hundred acres, more or less." In March, 1904, plaintiff caused the land to be surveyed, when it appeared that there were but ninety-three and fifty-one one hundredths acres in the tract. In this suit recovery for the amount paid for this shortage is demanded. The answer was a general denial, and by way of cross-petition the defendant averred that a secret sale had been negotiated by plaintiff while acting as defendant's agent to find a purchaser, which fact he had concealed from his principal, and asked that he account for the profits acquired.

This cross-petition is without support in the evidence. Plaintiff had bargained for the land in January, and on February 10th had paid $500 on the purchase price. Not until the next day had he ever met Graaffs, to whom he disposed of the property at a substantial advance. He had ceased to be defendant's agent at that time, and had the right to dispose of the property to whomsoever he pleased at such profit as he might legitimately obtain, and was under no obligation to account therefor to defendant. The assumption that the sale to Graaffs was before the payment to defendant is without support in the evidence.

The main controversy is with reference to recovery of the shortage in the quantity of land sold. Some question is made in argument as to the accuracy of the survey; but an 1. Deeds: description: acreage: "more or less": equitable relief. examination of the record has satisfied us that the tract described in the deed contains but the acreage as computed by the surveyor. It will be noted that the description is followed by the words " containing one hundred acres, more or less." These words indicate a sale in gross, even though the price stated may be an exact multiple of the number of acres mentioned; but they do not indicate an engagement that the purchaser took the risk, *ipso facto,* of the quantity of the land conveyed. In connection with a quantitive recital in the deed, they are to be construed as indicating that the

acreage mentioned is approximately the number of acres within the metes and bounds, or subdivision, name, number or lot by which the tract of land conveyed is designated. The expression cannot enlarge the boundaries mentioned in the deed. *Poague v. Allen,* 26 Ky. 421; *Brady v. Hennion,* 21' Super. Ct. (N. Y.) 528. Nor do they have reference to the state of the title. *Williamson v. Hall,* 62 Mo. 405. They indicate that all the land within the boundaries defined by the deed is included, and in the absence of other evidence, unless the discrepancy is great, that the parties to the instrument take the risk as to quantity. In such a case the expression is to be regarded as descriptive merely, and not as of the essence of the contract.

But, where the discrepancy between actual quantity and that estimated is very great, the doctrine seems to prevail that a court of chancery will relieve on the ground of mistake. *Nelson v. Matthews,* 2 Hen. & M. (Va.) 164 (3 Am. Dec. 620); *Harrison v. Talbott,* 2 Dana (Ky.) 258. This is on the theory that the difference is relatively so great as in itself, in connection with other recitals in the deed, to import the probability of a mistake having been made by the parties. *Hill v. Buckley,* 17 Ves. Jr. 394; *Harrell v. Hill,* 19 Ark. 102 (68 Am. Dec. 212); *Couse v. Boyles,* 4 N. J. Eq. 212 (38 Am. Dec. 514); *Paine v. Upton,* 87 N. Y. 327 (41 Am. Rep. 371); *Smith v. Fly,* 24 Tex. 345 (76 Am. Dec. 109); *Pratt v. Bowman,* 37 W. Va. 715 (17 S. E. 210); *Bigham. v. Madison,* 103 Tenn. 358, 52 S. W. 1074 (47 L. R. A. 267), and cases collected. The risk taken is of a reasonable excess or deficiency only. *Hosleton v. Dickinson,* 51 Iowa, 244.

But where the sale is by the acre the differences presumed to have been contemplated by the parties are only such as are due to the errors incident to measurements by different surveyors and the variation in the instruments used, and the words "more or less" in the deed are treated as words of

2. SAME:
sale by
the acre.

safety or precaution merely, and intended to cover but slight and unimportant inaccuracies. *Belknap v. Sealey,* 14 N. Y. 143 (67 Am. Dec. 120) ; *Hoffman v. Johnson,* 1 Bland (Md.) 103 ; *Triplett v. Allen,* 26 Grat. (Va.) 721 (21 Am. Rep. 320) ; *Oaks v. De Lancey,* 133 N. Y. 227 (30 N. E. 974, 28 Am. St. Rep. 628). And this rule has been applied to executory contracts of sale in gross. *Harrell v. Hill, supra; Hill v. Buckley, supra.* But in *Paine v. Upton,* 87 N. Y. 327 (41 Am. Rep. 371), it was held that there is no distinction between executed and executory contracts as to what will entitle to equitable relief. In a case where the difference is slight as compared with the whole number of acres, the courts, inasmuch as the parties have expressed themselves as being satisfied, whether the tract be more or less, will not aid either party. *Frenche v. Chancellor of N. J.,* 51 N. J. Eq. 625 (27 Atl. 140, 40 Am. St. Rep. 548). In the last case there was a difference of but one and fifty-eight one hundredths acres in a tract of one hundred and ninety-five and ninety-eight one hundredths acres. The authorities are numerous and will be found collected in 20 Am. & Eng. Ency. of Law (2 Ed.) 873 *et seq.,* and 13 Cyc. 639. The result of their examination is that much depends on the circumstances of each particular case, though the decisions may be separated into two general classes treating of (1) sales by the acre and (2) sales in gross or by boundaries. Again, sales by the acre may be subdivided into (1) those wherein this is expressed in the conveyance and (2) those wherein this was not so expressed, but such was the understanding of the parties. In both of these classes a court of equity will grant relief if it clearly appears that there is considerable excess or deficiency between the quantity actually conveyed and that named in the deed, even though this be followed by the words " more or less."

Sales in gross or by boundary are divisible into three subclasses : (1) Those strictly by the tract, without reference to negotiation or estimated quantity of acres; (2) those

in which the quantity may be referred to in the contract, but this is only by way of description, and under such circumstances or in such manner as to show that the parties intended to risk all contingency as to quantity, however much the discrepancy might be; and (3) those in which it is reasonably probable, from the price stated, in connection with the value and the extent of the discrepancy, or from extraneous circumstances, such as locality, value, price, time, and the conduct and conversation of the parties, that they did not intend to risk more than the usual rate of excess or deficiency, or than such as might reasonably be calculated on within the range of ordinary contingency. It is manifest that contracts within the first two subdivisions, in the absence of any proof of fraud, will not be interfered with by a court of equity, for the evident reason that the parties have intended to hazard the quantity regardless of the extent of any possible discrepancy. But under the third subdivision any unreasonable surplus or deficiency will entitle the injured party to equitable relief, unless in some way he has waived or forfeited this right to demand the same. The discrepancy in this case is not sufficient to bring it within this subdivision. The shortage was six and forty-nine one hundredths acres in one hundred, and we have discovered no case declaring this so unreasonable as to justify relief. In *Yearley v. Morris,* 9 (Ky.) Law 703 (6 S. W. 433), a description of 282 acres fell short twenty acres, and the deficit was held insufficient, in the absence of proof that the sale was by the acre. While the words do not extend to a variation of one-half of the tract, as held in *Lee v. Hester,* 20 Ga. 588, or one-quarter, as decided in *Smith v. Fly,* 24 Tex. 345 (76 Am. Dec. 109), or to one-fifth, as declared in *Gentry v. Hamilton,* 38 N. C. 376, yet in a case like this it cannot well be said that the proportion may be greatly lowered below that in the last case, in view of the nature of the description, without impinging on what the parties may be assumed to have intended. It will be ob-

served that one of the boundaries is the middle of " Mosquito creek." This may be assumed to have a sinuous course, as is usual with streams of like magnitude, and two of the boundary lines extend to the middle of that stream, with their length not designated. In view of the uncertainties involved in these boundaries, and the fact the deed was copied from that conveying the land to defendant, we are not inclined to say that the deficiency alone is such as to warrant the inference of mistake or fraud in the execution of the deed.

The evidence, however, was such as to warrant the conclusion that, though a sale by the acre was not expressed in the deed, such was the understanding of the parties. The plaintiff was a member of a firm engaged in the land business, to whom the defendant's husband wrote January 3, 1901, stating that, if a purchaser were found before February 15th following at $50 per acre, a commission of 3 per cent. would be paid, and that there were 100 acres in the farm. Thereafter some correspondence was had in which plaintiff offered $45 per acre. Later a conversation took place through the telephone, in which defendant's husband advised plaintiff that he could not take less than the price named in the letter, but would allow him the same commission as though he had induced another to buy, and they agreed upon $4,850 as the price, and the offer was accepted, in pursuance of which the deed was executed. Tyler admitted he told Rathke over the telephone that there were one hundred acres, and the latter bought it for that. Both supposed the acreage to be as represented, but were mutually mistaken. Precisely such a case was made out as brings it within the second subdivision of the first class mentioned, and under the rules laid down justify relief by a court of equity. The deficiency was substantial, not slight, and much greater than could have been contemplated as likely to arise from the incidental differences due to different measurements and instruments employed.

Appellant insists, however, that she is not bound by the

negotiations of her husband.   It may be, as admitted, that she would have testified that she was not aware of the area of the land and knew nothing of the transaction aside from the execution of the deed.

**3. HUSBAND AND WIFE: agency.**

This, under the circumstances disclosed, was tantamount to saying that she left the entire matter with her husband.   She must be presumed to have known that some negotiations preceded the execution of the deed.   The sum of $500 was paid to him on February 10th, which was applied on the consideration named therein.   The amount allowed as commission was deducted therefrom.   The deed was sent to a Glenwood bank, to be delivered upon payment of the balance of the purchase price, upon request made to her husband.   He testified that she " had no knowledge of the transaction, only in a general way " that he wanted to sell the land; also that she had not authorized him to contract for the sale of one hundred acres.   Doubtless she had not defined his authority in any particular respect; but the facts recited above clearly indicate that everything in connection with the sale, save signing the deed, was done through him, and we think the only reasonable inference therefrom is that he was authorized to do whatever was necessary in the ordinary course of business to effect a sale of the farm, and certainly representations of the acreage to be disposed of were included therein.   See *Bird v. Phillips,* 115 Iowa, 703.

The record sustains the decree, and it is *affirmed.*