John Prenosil et al., Appellants, v. Frankie C. Pelton et al., Appellees.

**DEEDS: Construction and Operation—Quantity of Land—''More or 1 Less.''** The words "more or less" are not a universal haven of refuge against personal liability for a misstatement or overstatement by a grantor as to the quantity of land he undertakes to convey; and, if the quantity fails considerably short of what it is represented to be, the use of the said words do not, of themselves, relieve the grantor from liability for the shortage.

**DEEDS: Construction and Operation—Quantity of Land—Sale in 2 Gross.** .That a sale of land is in gross, and not by the acre, does not necessarily serve as a defense to a claim for the shortage of land conveyed.

**EVIDENCE: Documentary—Contract for Sale of Land.** The orig- 3 inal or preliminary contract for the sale of land is not admissible for the purpose of contradicting the truth of any matter stated in the deed, or changing or avoiding the legal effect of such instrument, although it is admissible upon the question of whether the sale was in gross or by the acre, or where it is sought to reform a deed as not embodying the real intent of the parties thereto.

**VENDOR AND PURCHASER:** Remedies of Purchaser—Shortage in Quantity of Land—"More or Less." A shortage of more than 30 acres in land conveyed as containing 180.10 acres is not such a "slight variation" or "reasonable deficiency" or "near approximation" as may be presumed to have been contemplated by the parties in the use of the words "more or less;" and, in the absence of some other defense, the purchaser would be entitled to relief therefor.

**EVIDENCE:** Burden of Proof—Shortage in Quantity of Land— "More or Less." The defense that a shortage of land was known to the plaintiff, and that the phrase "more or less" was used with the understanding that it should cover any existing discrepancy, is an affirmative one, which the defendant would have the burden of proving.

**DEEDS:** Construction and Operation—Deficiency in Acreage— Grantor's Liability. A deficiency of 30 acres in the conveyance of 180.10 acres is a gross deficiency, and the grantor cannot avoid liability on the ground that he did not intend to be bound by an agreement or deed conveying that amount of land.

**VENDOR AND PURCHASER:** Performance of Contract—Deficiency in Acreage. Where the liability of a grantor was not predicated upon any attempt to convey land which once existed, and has since been washed away, but upon a deed in which it was assumed to convey land having an approximate area of 181.10 acres, when, in fact, its area was 30 acres less, and the material question was as to whether there was a shortage or deficiency greater than was reasonably to be understood from the use of the phrase "more or less," it was immaterial how the shortage was created.

**VENDOR AND PURCHASER:** Damages—Deficiency in Acreage. While, ordinarily, if a grantee had retained the ownership of property in relation to which there was a shortage of 30 acres, his damages would be such proportional part of the entire purchase price as the proved deficiency of acreage bore to the quantity stated in the deed, yet, where he has sold the land by the same description under which it was conveyed to him, and has succeeded in settling his own liability for the shortage by the payment to his grantees of a certain sum and costs, his actual damage is the said sum and costs, as of the date when paid.

*Appeal from Linn District Court.*—Milo P. Smith,
Judge.

July 10, 1919.

The opinion states the case.—*Reversed.*

*Crosby & Fordyce,* for appellants.

*Tourtellot, Donnelly & Swab,* for appellees.

Weaver, J.—On February 27, 1913, the defendants
united in conveying to John Prenosil and his wife, Fran-
tiska Prenosil, by deed of general warranty, a farm in Linn
County, Iowa. The description of the land so conveyed is
followed by the statement:

"All of the above-described land being in Township 84
North of Range 8 West of the 5th P. M., containing in all
one hundred eighty-one and 10/100 acres more or less."

The expressed consideration was "one dollar and other
valuable consideration," but the real, agreed consideration
appears to have been $10,000 or $9,500.

Thereafter, the grantees sold and conveyed said land
by the same description and with same warranty to Don
Barnes and William Chamberlain, in good faith, believing,
as is alleged, that the premises so conveyed contained the
full number of acres represented and warranted in the de-
fendants' deed to themselves. Thereafter, the said Barnes
and Chamberlain, claiming that the land so conveyed was
materially short of the described measurement, and con-
tained, in fact, only about 150 acres, brought suit against
said Prenosil and wife for such alleged breach of warranty
and the recovery of damages. After the commencement of
said action, Prenosil and wife gave written notice thereof
to their grantors, the defendants herein, demanding that
they appear and defend, or unite in defending, against the
Barnes and Chamberlain claim.

The defendants disregarded said notice, did not appear or take any part in the defense of said suit, and Barnes and Chamberlain recovered damages therein to the amount of $1,550 damages and $38.70 costs. It is also claimed that, in making said defense, the Prenosils incurred expenses for counsel fees, $430.

At some stage of these proceedings after the sale of the land to Barnes and Chamberlain, Frantiska Prenosil died intestate, and her children and heirs have been made parties to the action. That litigation having been terminated, John Prenosil, with the heirs of his deceased wife, brought this action against their grantors, the defendants herein.

Their cause of action is stated in several counts. The first count states, in substance, the matters hereinbefore related, and thereon asks to recover upon the alleged breach of defendants' warranty, damages to the amount of $2,150. The second restates the same matter contained in the first count, but includes therein the allegation that defendants falsely and fraudulently represented the quantity of land to be 181 acres, when, in fact, it was less than 150 acres. In the third count, plaintiff restates the matters pleaded in the first count, but adds thereto the allegation that the deed was made by the grantors under a mutual mistake of the fact as to the quantity of land, both believing and understanding that the farm contained the described quantity, 181.10 acres.

Answering the petition, the defendants admit making the alleged conveyance to Prenosil and wife; admit the making and delivery of the deed in the form pleaded by the plaintiffs; admit the bringing of suit by Barnes and Chamberlain against the Prenosils, and that notice was served upon them and they did not appear or defend; and deny all other allegations of the several counts of the petition.

By way of further and affirmative defense, defendants

allege that they promised and undertook only to convey their right to the said interest in the land, and not to warrant the number of acres; that the sale was for the lump sum of $10,000, and not by the acre; that, at the time the preliminary contract was entered into between them and plaintiff and his wife, the question as to the quantity of land was discussed, and it was understood and agreed between them that defendants were undertaking to sell and convey only such lands as were within the description found in their title papers, and that plaintiffs were buying the same, subject to any possible shortage in actual measurement.

The defendants also, by cross-petition, reassert their claim that, while their deed to Prenosil and wife does describe the land as containing 181.10 acres, it was so done only to make the conveyance correspond in terms with the conveyances theretofore made by prior owners through whose hands the property had passed, and not with any intent to warrant the acreage of the land; and that the Prenosils took the conveyance with that knowledge and understanding. Defendants therefore prayed that the contract and deed be reformed, if necessary, to express such agreement.

After hearing the evidence offered, the trial court found that plaintiffs were not entitled to the relief demanded, dismissed the bill, and entered judgment in the defendants' favor for costs. No reformation of the deed or contract was decreed.

The evidence shows, without serious controversy, that the sale to Prenosil and wife was through the agency of one Viktorin, with whom was associated one Dobrovsky. Prenosil and his wife were Bohemians, unable to speak or write in the English language, while the defendants could not speak or understand the Bohemian tongue. When the negotiations had reached the point of agreement, Mr. Bur-

esh, an attorney who was able to translate between the parties, was called in; but the part taken by him, and what transpired in his presence, are the subject of dispute. It is the claim of the defendants that Buresh was called in by Prenosil and wife as their attorney, and that he drew the contract; but he swears that he was not and had not been attorney for the Prenosils, and was called simply to translate a contract which had already been prepared in the office of defendants' agents.

The contract, as written, provides that defendants agree to sell and convey to Prenosil and wife all their right, title, and interest in the land, describing it in parcels, and as "containing in all 181.10 acres, more or less." The contract further provided that, upon payment of the price, the defendants would make and deliver to the purchasers "a warranty deed of said premises, as above agreed." The deed as eventually made describes the land in the language of the contract, and as containing 181.10 acres, more or less, and concludes with all the usual covenants of warranty.

The evidence shows without dispute that, upon actual measurement, the farm contains less than 150 acres, or more than 30 acres less than the quantity mentioned in the deed. It is also undisputed that the Prenosils conveyed the farm so purchased to Barnes and Chamberlain by the same description and with the same warranty; that Barnes and Chamberlain brought suit against the Prenosils on their said covenant to recover damages on account of the shortage; that defendants, though duly notified, refused to assume or assist in the defense; and that Barnes and Chamberlain recovered damages therein to the amount of $1,550. Plaintiffs' claim for the recovery of damages thus sustained is to be considered from different standpoints. There is no attempt in argument on the part of counsel to differentiate between an action on a covenant of warranty and an ac-

tion for damages because of fraud or mistake in the state-
ment of quantity of land conveyed by the deed.

I.   Let us first inquire as to the legal effect of the deed
which defendants admit they made and delivered. It is a
deed of general warranty, and purports to convey certain
lands containing 181.10 acres, more or less. It is the con-
tention of appellee that this statement of acreage is de-
scriptive only, and that proof of a shortage found on actual
measurement will not entitle the grantee to a recovery of
damages.

It may be conceded to be the general rule that, where
a vendee buys land with reference to described boundaries
or to government survey, the added statement of the acre-
age is regarded as merely descriptive, unless the discrep-
ancy is so great as to reasonably excite suspicion of fraud
or mistake.  But, contrary to the impression which seems
to prevail in some quarters, more especial-
1. DEEDS: con-      ly among adventurous traders in real estate
struction and
operation:          titles and equities, the words "more or less"
quantity of
land: "more         are not a universal haven of refuge against
or less."
personal liability for misstatements or over-
statements by a grantor of the quantity of land he under-
takes to convey.  The holding by this court in *Hosleton v.
Dickinson,* 51 Iowa 244, and *Kitzman v. Carl,* 133 Iowa
340, both of which are cited by the appellees, emphasizes
this limitation upon the general rule.

In the first of these cases, there had been a sale and
conveyance of land in gross for a lump price, and the deed
described the land as containing "30 acres, more or less."
Subsequent measurement disclosed the fact that in actual
measurement the tract contained less than 20 acres.  The
buyer brought action for relief on account of this discrep-
ancy, and was met with the same objection on which the
appellees here rely.  In overruling the defense, this court
held that the words "more or less" in the deed did not nec-

essarily imply that the grantee assumes the risk of any and all shortage in the measurement of the land, and said that the risk so assumed covered only such "slight variation" as may reasonably be expected to occur in such transactions, and that, if the quantity "falls considerably short" of what it is represented to be, the use of the qualifying words "more or less" does not, of itself, relieve the grantor from liability for the shortage.

In the *Kitzman* case, we said that these words ordinarily mean that the grantor does not warrant the precise quantity of land named therein, but that they do import "that the actual quantity is a near approximate to that mentioned."

In *Boddy v. Conover,* 126 Iowa 31, we restated the rule substantially as above expressed, saying:

"The force of the qualifying word, we think, is simply that, while the parties do not bind themselves to the precise quantity of 65 acres, it imports that the actual quantity is a near approximation to that mentioned."

In the same case, we also said that:

"The mere fact that a deficiency is very large in proportion to the supposed quantity is often treated as in itself evidence of fraud or of mutual mistake."

This holding is again affirmed in *Rathke v. Tyler,* 136 Iowa 284, where the authorities are quite fully reviewed, and in *Gardner v. Kiburz,* 184 Iowa 1268. In the *Rathke* case, a shortage of 6½ acres in 100, and in the *Gardner* case, of 15 acres in 500, was held to be a substantial variation in the quantity, not contemplated or covered by the qualification "more or less."

And while it may be true, as urged by appellees (though it is a subject of radical dispute), that the sale was of the land in gross, and not by the acre, that fact does

not necessarily serve as a defense to the

**2. DEEDS: construction and operation: quantity of land: sale in gross.**

plaintiffs' claim. See the cases above cited: *Hosleton v. Dickinson; Rathke v. Tyler; Boddy v. Conover; Gardner v. Kiburz;* also *Wilson v. Randall,* 67 N. Y. 338, 341; *Hill v. Buckley,* 17 Vesey·394, 401; *Paine v. Upton,* 87 N. Y. 327; *Couse v. Boyles,* 4 N. J. Eq. 212.

The subject whether, in a case of this kind, the grantor or grantee may put in evidence the original or preliminary contract, and to what extent and for what purpose, if

**3. EVIDENCE: documentary: contract for sale of land.**

at all, it can properly be admitted, is argued by counsel on both sides. In the *Gardner* case, supra, we had occasion to consider this question, and held it to be well settled that such evidence was proper for what it might be worth in its bearing, if any, upon whether the sale was in gross or by the acre; ·but we think it has never been held admissible for the purpose of contradicting the truth of any matter stated in the deed, or changing or avoiding the legal effect of such instrument. This statement is, of course, subject to the qualification that such evidence may also be admissible where it is sought to reform a deed as not in fact embodying the real intent of the parties thereto.

In the case before us, it may be conceded that the contract was properly offered in evidence, but this concession operates in no manner or degree to avoid the effect of the rule of the authorities cited above. In the

**4. VENDOR AND PURCHASER: remedies of purchaser: shortage in quantity of land: "more or less."**

written contract, as well as in the deed, the land is described as containing 181.10 acres; and this serves to emphasize the defendants' undertaking that the actual quantity of land conveyed was a near or reasonable approximation to the quantity named in both writings. ˙Such being the case, we think it must be said, as a matter of law, that a shortage of more than 30 acres,

in land conveyed as containing 181 acres, is not such "slight variation" or "reasonable deficiency" or "near approxima- tion" as may be presumed to have been contemplated by the parties in the use of the words "more or less," and that, in the absence of some other defense, the plaintiffs will be entitled to relief.

II.   It is the claim of the defendants that this shortage in the land was known by the plaintiffs and discussed be- tween the parties, and that the phrase "more or less" was inserted in the writings with the under- standing that it should cover the discrep- ancy so existing.

5. EVIDENCE: burden of proof: short- age in quantity of land: "more or less."

If we were to assume this to be a good defense, it is an affirmative one, and the burden of proof thereon is upon the defendants.   It is true that one of the defendants and their agent, Viktorin, do, in effect, thus testify, but, to say the least, much of this tes- timony is lacking in convincing quality, and we think it insufficient to overcome the burden which the appellees must assume in this respect.   The conversations between the par- ties on which appellees thus rely apparently took place, if at all, during the negotiations before the papers were ex- ecuted.   It is conceded that, owing to differences in lan- guage, the appellees and the Prenosils could not under- stand each other.   Viktorin, however, was able to under- stand and translate.   None of the alleged talk is shown to have been had in the presence of any disinterested person, unless it be Buresh, who was present at the signing of the contract, and he does not corroborate the defense.   It thus appears that, in effect, this feature of the defense rests en- tirely upon the very much interested witness Viktorin, and his examination demonstrates that he is endowed with that peculiar kind of memory which reproduces in very minute detail certain words and incidents attendant upon the ne-

gotiations, but becomes very hazy and uncertain when questioned upon others of apparently equal importance.

Taking the evidence as a whole, it clearly fails to establish the defendants' proposition that the sale and conveyance were made with knowledge and understanding on part of the grantees that the land was so largely deficient in quantity, or that the words "more or less" in the contract and deed were to have any other meaning or effect than such as the law implies therefrom with reference to sales and conveyances of land in general.

III.　In the preceding paragraphs, we have treated the case on the defendants' theory that the evidence of the alleged oral understanding governing the effect of the contract and deed as to the quantity of land sold and conveyed was competent and material.

6. DEEDS: construction and operation: deficiency in acreage: grantor's liability.

It will be remembered that, while the defendants, in their answer and cross-bill, asked for a reformation of the contract and deed to make them accord with such alleged intent, no reformation was decreed by the trial court; and we are of the opinion that none could properly have been decreed, under the showing made. We have, therefore, to accept the written contract and the deed made in pursuance thereof as valid instruments, and to give them effect accordingly. They import the undertaking of the defendants to sell and convey certain lands containing substantially 181.10 acres, and such undertaking carries with it liability in damages if the quantity actually conveyed does not reasonably approximate the specified acreage. The deficiency shown, and not denied in testimony, cannot be said to be reasonable. In fact, it may fairly be said to be gross. That liability cannot be avoided by plea or proof that defendants did not intend to be bound by their agreement or deed according to its terms. *Horn v. Phillips,* 167 Iowa 169.

IV. There is some discussion by counsel upon the effect of certain testimony tending to show that the soil of a part of the original acreage of the described tracts of land has been washed away by the flow or over-

**7. VENDOR AND PURCHASER: performance of contract: deficiency in acreage.** flow of the stream along the course of which a part of the premises is located. The record in this respect is very meager, and seems to be entirely without materiality in this controversy.

Defendants' liability is not predicated upon any attempt on their part to convey land which once existed but has since been washed away, but upon their deed, by which they assumed to convey land having an approximate area of 181.10 acres, when, as a matter of fact, its area was less, by 30 or more acres. The material question is whether there was a shortage or deficiency greater than was reasonably to be understood from the use of the phrase "more or less;" and if so, it is immaterial how that shortage was created. The deed and contract speak for themselves as to what defendants undertook to convey. The fact that there was a very large and material shortage in the measurement is admitted, and that plaintiff has been thereby damaged is incontestable. The burden of avoiding the ordinary, prima-facie, legal effect of their contract and deed is upon the defendants, and the evidence offered by them is insufficient for that purpose.

It follows that the decree of the district court must be reversed, and the plaintiffs awarded a recovery of damages. Ordinarily, had plaintiffs retained the ownership of the property, their damages would be such

**8. VENDOR AND PURCHASER: damages: deficiency in acreage.** proportional part of the purchase price, $9,500, as the proved deficiency of acreage bears to the quantity stated in the deed, or about $1,650. The evidence of the engineer making the survey shows the actual shortage to be about

33 acres; but, as we have seen, plaintiffs have sold the land by the same description, and succeeded in settling their own liability for the shortage by payment to their grantees of the sum of $1,550, and costs, $38.70. Their actual damage is, therefore, $1,588.70, as of the date when this was paid; and this, as we understand the record, was on January 1, 1916.

A further claim of $430 is set up in the pleadings for attorneys' fees; but, after search of the printed record, we find no evidence in its support, and we are thus relieved from passing on the question whether payment of attorneys' fees incurred in resistance of the Barnes and Chamberlain claim would, in any event, be recoverable in this proceeding.

The plaintiffs, if they so elect within 30 days from the filing of this opinion, may have judgment against the defendants in this court for the sum of $1,588.70, with interest at 6 per cent from January 1, 1916. On failure of plaintiffs to so elect, the cause will be remanded to the district court of Linn County for the entry of judgment as above indicated.—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.