## ACUFF v. ALLEN.—191 S. W. (2d) 196.

Eastern Section. April 14, 1945.

Rehearing denied June 29, 1945.

Petition for Certiorari denied by Supreme Court, December 8, 1945.

452

W. Cecil Anderson and Judd Acuff, both of ¡Knoxville, for appellant.

J. C. Thomason and Frank L. Flynn, both of Knoxville, for appellee.

BURNETT, J. This is an action to recover for an acreage deficiency in the sale of a farm. Acuff conveyed to Allen a farm, and the improvements thereon, in Knox County for a total consideration of $16,500. Five Hun-

dred Dollars of this amount was for immediate possession. The written sales contract between the parties described the land as "situated in the Fifth Civil District of Knox County said to contain 140 acres more or less", etc. The deed executed pursuant thereto described the property by metes and bounds and "containing 112.2 acres, mores or less". The deed also conveyed two other small tracts; one of one and nine tenths acres and the other one acre less about one acre particularly described which should be deducted from the 112.2 acre tract.

The Chancellor held that Acuff "concealed or aided and abetted in concealing from the complainant the true facts with reference to the quantity of land in said tract." and that Acuff, therefore, "knowingly and wilfully defrauded the complainant".

He further held that on a survey the 112.2 acre tract only surveyed out at 108.6 acres which was 31.4 acres short of the 140 acres it was represented to contain and that, therefore, this "discrepancy or shortage is so great as to shock the conscience of the court, and even though actual fraud had not been practiced", that "fraud would be presumed" by reason of the shortage. On these findings the complainant was allowed a recovery of $2,826 plus interest from filing of this bill.

The pertinent facts as disclosed by this record are:

▇ Acuff had seen in one of the local daily papers a glowing advertisement of W. T. Harmon and Associates in which fine farms were advertised. He desired to acquire a larger farm and as a result of this advertisement contacted Harmon and Associates. He probably listed with them verbally the farm in question for sale provided he could get a net price therefor. Harmon claims a written listing. Acuff denies this fact. Harmon is asked to produce a written listing but fails to do so. We, there-

fore, accept Acuff's statement thereon. Harmon and Associates were large real estate agents dealing extensively in selling farms to the farmers of the various T. V. A. valleys who were crowded out by reason of the public dams being constructed therein.

About ten days prior to February 25, 1942, Harmon and Asociates took Allen to see the Acuff farm. Prior thereto they had published a glowing account of the Acuff farm in a booklet describing various farms they had for sale. In this booklet the Acuff farm was described as containing 140 acres. At the time Allen was taken to see the Acuff farm he was shown the farm and the boundaries thereof. The farm is fenced on all sides except one which is bounded by a creek. On this trip he made a perfunctory examination of the house and other buildings. Acuff made no statements to nor representations to Allen about the farm. These were made by Harmon and Associates. At the time of this first trip to the Acuff farm Allen was under contract to purchase a farm in Blount County. After seeing the Acuff farm he told Harmon and Associates that if they would get him out of the Blount County contract he would buy the Acuff farm. Harmon and Associates then arranged for Allen to be released from the Blount County contract by paying half the real estate commissions to the real estate firm that had secured the Blount County contract. Then it was that W. H. Harmon as an individual procured a three day option from Acuff to purchase his farm for $15,500. This option was dated February 26, 1942. On the same day he got Allen to sign the sales contract herein in which Allen agreed to pay $16,500 for the Acuff farm. Acuff signed this contract. Meantime Allen again inspected the Acuff farm, its boundaries, buildings, etc. Acuff never made any representations to Allen about the

farm. Harmon and Associates did represent it as containing 140 acres.

Immediately upon signing the sale contract Acuff turned his old deed and plats over to Allen's attorney who examined the title and prepared the deed from Acuff and wife to Allen. This old deed showed the main tract to contain 112.2 acres. On February 28, 1942, Acuff and wife and Allen along with Harmon and Associates met at Allen's attorney's office and closed the deal. The deed as prepared by Allen's attorney had the same description copied therein as was in Acuff's old deed. It showed the main tract as containing 112.2 acres. The deed as prepared was not read by Allen. It was left with his attorney to be recorded. After being recorded it was sent to Allen some six weeks after the deal was closed. Then it was that Allen read the deed and on seeing that the main tract was said to contain only 112.2 acres Allen immediately contacted Harmon and Associates and complained of the shortage. Harmon contacted Acuff and got the parties together in an effort to satisfy Allen. Acuff insisted that a former owner had told him there was 140 acres in the tract and that Allen would find that many acres there. On a resurvey it was found to contain only 108.6 acres.

Acuff insisted in his evidence that because of the information given him by a former owner he believed there was 140 acres in the tract. He says he told Harmon and Associates that was what he based his statement on. He is not contradicted in this. He says that this was his reason for signing the sales contract with the words "said to contain 140 acres more or less".

The Chancellor based his finding of actual fraud on the following facts which occurred at the final culmination of the deal. After Acuff and wife had executed the

deed and had been given Allen's check for $16,000 they left Allen and his lawyer and went into an outer office. While there the representative of Harmon and Associates said to Acuff that he had turned over the deed so that Allen could not see that it said "containing 112.2 acres". Acuff insists that he wanted to return then and explain the matter to Allen, but that the representative of Harmon and Associates would not consent to because he feared it would kill the deal. The representative of Harmon and Associates says just the opposite, i. e., that Acuff would not go back until the check cleared the bank. Be this as it may, Acuff did not go back, and if this is such fraud as would vitiate the contract Acuff is guilty thereof. Immediately following this colloquy the parties went to the bank and deposited the check and gave Harmon and Associates a check for $1,000. This was the amount Allen paid for the property over and above Harmon's option.

■■ The contract expressed the price at a lump sum, and not per acre. The theory of this suit practically concedes this a sale in gross and not by the acre. The entire record evidences a sale in gross. We, therefore, find as a fact that it was a sale in gross and not by the acre. In the absence of actual fraud or such a gross deficiency in acreage as to shock the conscience of the court a sale in gross is a sale at hazard as to quantity.

■ In addition to the authorities as cited in the excellent briefs herein we have made an exhaustive investigation of the authorities in this State and of other jurisdictions. In the latest opinion on the subject, Mr. Justice Chambliss in Smith v. Grizzard, 149 Tenn. 207, 212, 259 S. W. 537, 538, says: "the rule is that, where it clearly appears that the sale was made in gross, and not by the acre, and the purchaser not only had every oppor-

tunity afforded him to ascertain and satisfy himself definitely as to the extent and location and quantity and boundaries of the lands purchased, but actually did so, going personally upon the property and viewing it from every angle, he has no right to recover for a deficiency, unless actual fraud is proven, or the circumstances and the deficiency are such as to raise a presumption of fraud. The expression frequently used in this connection, 'so great as to shock the conscience of the court,' occurs always in direct association with the suggestion of a presumption of fraud. In other words, relief will be granted where a deficiency is so great as to shock the conscience of the court because a presumption of fraud must thereupon arise.''

In Smith v. Grizzard, supra, the Chancellor had decreed a deficiency of 15 percent and had allowed a recovery on the basis of mutual mistake. In reversing the Chancellor, the court said: ''In this case there was no mistake as to the boundaries, and there was no failure of title to any portion of the lands pointed out, in which classes of cases the doctrine of innocent and mutual mistake has been applied, and not to cases where the mistake was merely an erroneous estimate by one or both parties of the extent in acreage of an area so located and of such limited size as to be plainly viewed, and which had been carefully examined.''

The ouinion then says that it is to this class of cases that the following language of Mr. Justice Lurton, Waters v. Hutton, 85 Tenn. 109, 116, 1 S. W. 787, 789, applies:

'' 'The case is one of a purchase of a tract of land in the gross, after a personal examination by the vendee, who had gotten all that he wished or intended to buy, or that the vendor intended to sell. . . .

" 'No one who has the precise thing expected and intended to be purchased, can have, in a court of equity, an abatement in the price.' ''

The above quoted language of both Mr. Justice Chambliss and Mr. Justice Lurton could easily have been written about the facts of this case. Allen frankly admits he saw all boundaries and had gotten all the land therein. His only complaint is that upon a survey there was not 140 acres therein. His complaint was raised after he read his deed and it only said he was getting 112.2 acres. Query—Would he have raised the question had the deed been silent as to acreage or expressed it as containing 140 acres?

Of course honesty, fair dealing and forthrightness are to be desired in all human dealings. The degree to which this is evinced is largely a matter of early moral training. Some individuals do not have the desirable early home or church training to properly appreciate the need in our human dealings to be frank and open. Some feel it good business dealing to tell a man "there it is find out for yourself". The action of Acuff immediately after this deal was closed is not what the writer of this opinion would have done but can we say that this action constituted a fraud in fact which will vitiate this contract. We think not. The deal was closed. Acuff had not made any representations of facts that could not have been discovered by Allen before the closing of the deal. The actual land he saw was there. Allen was a man 60 years old and had farmed all his life. Allen had bought and sold two or three other farms. The old deed showing the description had been furnished his attorney. It showed the tract of land to contain 112.2 acres or the same as the deed to Allen. This certainly does not show any intent on Acuff's part to withhold the information from Allen.

Acuff's actions now being discussed reflect on his other testimony and actions under the premises but we do not believe them such as to constitute fraud under the circumstances.

In Mabardy v. McHugh, 202 Mass. 148, 88 N. E. 894, 895, 23 L. R. A. (N. S.) 487, 132 Am. St. Rep. 484, 16 Ann. Cas. 500, it is said: "A purchase and a sale of real estate is a transaction of importance and cannot be treated or entered into lightly. People must use their own faculties for their protection and information, and cannot assume that the law will relieve them from the natural effects of their heedlessness or take better care of their interests than they themselves do. Thrift, foresight and self-reliance would be undermined if it was the policy of the law to attempt to afford relief for mere want of sagacity. It is an ancient and widely, if not universally, accepted principle of the law of deceit, that, where representations are made respecting a subject as to which the complaining party has at hand reasonably available means for ascertaining the truth and the matter is open to inspection, if, without being fraudulently diverted therefrom, he does not take advantage of this opportunity, he cannot be heard to impeach the transaction on the grounds of the falsehoods of the other party. . . . Slaughter's Adm'r Co. v. Gerson, 13 Wall. [379], 383, 20 L. Ed. 627; Long v. Warren, 68 N. Y. 426, 432; Bailey v. Merrill, 3 Bulstrode, 94. This rule in its general statement applies to such a case as that before us. It is easy for one disappointed in the fruits of a trade to imagine, and perhaps persuade himself, that the cause of his loss is the deceit of the other party, rather than his own want of judgment."

The Massachusetts rule is: "that where the seller of real estate, shows upon the face of the earth its true

boundaries and does not fraudulently dissuade full examination and measurement and the estate is not so extensive or of such character as to be reasonably incapable of inspection and estimate, and there is no relation of trust between the parties, the purchaser has no remedy for a misrepresentation as to the area alone.''

In practice this statement is merely a different way of stating the rule as applies in this state. Under the above stated rule the courts have sufficient latitude to enforce the ''shock the conscience of the court'' rule applicable in Tennessee.

 Through oversight the Chancellor miscalculated the acreage shortage. He failed to include the two small tracts of 2.9 acres. This makes the shortage of the whole 28.5 acres or a fraction over 20 percent. Under the facts of this case we have never adopted a percentage rule in Tennessee. It seems to us obvious and reasonable that we are right therein. The facts of each case should govern in this matter. We do not think the shortage herein should or would ''shock the conscience of the court''. Both parties are farmers. No sharp practice or undue advantage was taken of the appellee. He viewed the farm and its boundaries—they were well defined and the farm certainly was not so large as to be incapable of an estimate. He could have had it surveyed if he wished. There is no failure to any part of the land shown Allen. He got all that he thought he was getting. In Adams v. Brown, 4 Baxt. 124, the land supposed to be sold contained 200 acres, whereas, in fact, it only contained 150 acres, or a deficiency of 50 acres—25 percent. The court said: ''The next objection, that there is a deficit in the quantity of land, is equally untenable. The land is not sold by the acre, the boundaries were shown to defendant, and it was estimated in the deed to

Brown, as in the deed to Adams, to contain 'two hundred acres more or less.' "

This case is cited with approval in Young v. Weakley, 144 Tenn. 360, 232 S. W. 949, where other shortage cases are analyzed.

We do not know what authorities the Chancellor had before him in reaching his conclusion herein. We can assume the authorities cited and relied on in appellee's brief were relied on below. None of these authorities are controlling here for the reasons hereinafter set out.

In Breast v. Waddell, 2 Tenn. Civ. App. 544, the facts show an inexperienced old woman taken advantage of by a shrewd experienced man. There was a shortage of 80 percent of the land in a supposedly 100 acre tract. The court said: "the relations between these parties,—of confidence and reliance upon the one side, and experience and shrewdness upon the other,—affords indubitable grounds of relief."

In Bigham v. Madison, 103 Tenn. 358, 52 S. W. 1074, 47 L. R. A. 267, the title to about one-half of a 25 acre tract of land failed, it being the most valuable one-half. The purchaser did not get the identical land he "intended to buy" or that was intended he get. "An extreme case on the facts was therefore presented." Smith v. Grizzard, supra. In this case (i. e., Bigham v. Madison) many statements are made of general rules which were not necessary to a decision of the case. These statements have apparently been responsible for a great deal of confusion in our jurisprudence on related subjects since. This confusion has possibly been brought about by the failure of the trial courts to properly analyze the peculiar facts of Bigham v. Madison. See Rich v. Scales, 116 Tenn. 57, 65, 91 S. W. 50, 51; Young v. Weakley, 144 Tenn. 360, 232 S. W. 949; Smith v. Grizzard, supra.

Tinsley v. Hearn 136 Tenn. 586, 191 S. W. 127, is relied on and it is said that the Chancellor relied on this case in fixing the damages herein. Unquestionably the rule as to damages is correctly set forth. The third paragraph of the opinion is cited on the shortage question. This paragraph is as follows: ''Though the sale was in gross, and the deed of conveyance described the tract as containing 66 acres, 'more or less,' a deficiency of 16⅔ per cent. (one-sixth) of the entire boundary represented is so great as to justify an inference of mutual mistake, and the purchaser is entitled to an abatement of the purchase price. Both the chancellor and the Court of Civil Appeals so held, and correctly, under the rules laid down in Bigham v. Madison, 103 Tenn. 358, 52 S. W. 1074, 47 L. R. A. 267, and Rich v. Scales 116 Tenn. 57, 91 S. W. 50.''

This case has never been referred to in a reported Tennessee case. Mr. Special Justice Malone in Young v. Weakley, supra, does not refer to it yet he apparently cited and analyzed all other reported cases in this State and many from other jurisdictions. Apparently the statement is based on general rules stated in Bigham v. Madison, supra. Our subsequent cases hereinbefore cited have held otherwise. Apparently in this case (i. e., Tinsley v. Hearn) the question for decision was one of damages rather than one of shortage. The opinion does not set forth a statement of facts of sufficient length to tell whether or not the shortage statement is applicable.

Rich v. Scales, supra, is authority for the conclusion we have reached herein; not for that arrived at below. In this case there was a shortage in feet on various sides of a lot along railroad property part of which was held adversely. This was obvious to the purchaser. The lower court decreed in favor of the purchaser basing its decision on the decision of Bigham v. Madison, supra.

Our Supreme Court through Mr. Justice Neil reversed the lower court.

For the reasons herein set forth the case is reversed and the suit dismissed at the cost of the appellee and his sureties.

Hale and McAmis, JJ., concur.

### On Petition for Rehearing.

The petition for a rehearing filed herein is to all intents and purposes a reargument of the points heretofore very carefully considered by us. Some new authorities from jurisdictions outside of Tennessee are cited which are contrary to the decisions of this State as set forth in our original opinion. We very definitely disagree with these citations and feel that our courts have heretofore decided the questions correctly from both an equitable and legal standpoint.

■ It is now inferentially argued that we held that Acuff was not bound by the statements of Harmon and Associates. We had no intention of so holding. The matter was not argued before. We think it a well recognized principle in this State that the statements of one's agents as to acreage are binding on the principal. The findings of fact and statements by us on this matter were made to show that Acuff personally was guilty of no fraud in the matter. These findings are necessarily drawn from the proof in this record and our statement therein was necessary in view of the finding of the Chancellor that: "Acuff knowingly and wilfully defrauded the complainant by false representations as to the number of acres of land contained in said tract."

On a re-examination and study of the record we think we erroneously made the statement in our finding of

fact: "Through oversight the Chancellor miscalculated the acreage shortage. He failed to include the two small tracts of 2.9 acres. This makes the shortage of the whole 28.5 acres or a fraction over 20 percent."

One reading this record naturally finds and concludes as we did above because all reference in questions and proof is to the 112.2 acre tract without reference to the two small tracts but on a careful scrutiny of the plat as prepared by Mr. Lack it is seen that these two small tracts are included in his total survey. The shortage is therefore 31.4 acres as found below instead of 28.5.

This slight difference in acreage can not and does not change our conclusions as heretofore set forth in our original opinion.

For reasons sufficient to him, Judge McAmis took no part in this petition to rehear.

The petition must be denied.